IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| TRUE CHEMICAL SOLUTIONS, LLC | § § § | |
| *Plaintiff/Counter-Defendant* | § § | |
| | § | Civil Action No. 7:18-CV-78-ADA |
| -*vs*- | § § | |
| PERFORMANCE CHEMICAL COMPANY | § § § | |
| *Defendant/Counter-Plaintiff* | § | |

**DEFENDANT/COUNTER-PLAINTIFF'S OPPOSED MOTION FOR LEAVE TO AMEND ITS INFRINGEMENT CONTNENTIONS**

Defendant/Counter-Plaintiff Performance Chemical Company ("PCC") respectfully requests leave to amend its Infringement Contentions ("ICs") as to Plaintiff/Counter-Defendant True Chemical Solutions, LLC ("True Chem").

## I.   INTRODUCTION

PCC's proposed amendments make clear that all of True Chem's frac trailers, including recently inspected frac trailers T-4, T-5, T-6, T-8, T-9, T-10, and T-12, are accused instrumentalities in this action and further disclose how True Chem's frac trailers satisfy the terms of claim elements as construed by the Court.

## II.   FACTUAL BACKGROUND

On April 27, 2018 True Chem initiated this action against PCC by seeking a declaratory judgement of noninfringement and invalidity.   True Chem requests a broad, sweeping ruling from the Court that it "does not infringe, induce infringement, or contribute to infringement." (Dkt. No. 4, Section 8.1).   By this broad request for declaratory relief, True Chem has put at issue in this case any and all of its activities.

1

PCC counterclaimed on September 25, 2018, asserting infringement of its two patents by True Chem's manufacture and use of frac trailers. (Dkt. No. 25). Pursuant to the applicable local patent rules, PCC prepared, served and filed infringement contentions on October 26, 2018, disclosing the information it had available to it at that time regarding True Chem's infringing activities. (Dkt. No. 29). The information then available to PCC was largely obtained during discovery in connection with a state court proceeding in which the parties were litigating state law claims (now settled).

Fact discovery in this case was stayed by the Court until the Markman Hearing. (Dkt. No. 54, p. 7).

On October 17, 2019, PCC served a Notice of Inspection for all of True Chem's frac trailers setting the date for the inspection as November 20, 2019. (Ex. 1). That same day, PCC also served Interrogatories, Requests for Production, and a FRCP 30(b)(6) deposition notice on True Chem. (Ex. 2, Ex. 3, and Ex. 4, respectively).

A week later the parties filed their Joint Motion for Seventh Modified Scheduling Order (Dkt. No. 67), which, among other things, moved the deadline for amended infringement contentions to December 6, 2019. In the Joint Motion for Seventh Modified Scheduling Order, True Chem and PCC jointly made the following representations to the Court about the special issues involved in this case:

- The patented technology relates to automated water treatment trailers (also known as "frac trailers") that are used in connection with oil and gas exploration projects.

- The Moving Parties are competitors in the industry and supply their own frac trailers for these oil and gas exploration projects.

- Unlike some other patent cases where the accused instrumentalities are consumer goods that can be easily

> acquired from a store and inspected, in this case the relevant frac trailers *are specially made in-house and not available for public inspection*.

*See* Dkt. 67 at p. 1 (emphasis added).

On November 13, 2019, after receiving no responses or communication regarding the noticed inspection scheduled for November 20, 2019, PCC reached out to True Chem. During the ensuing call, it appeared to counsel for PCC that the parties would be willing to work together and avoid gamesmanship regarding discovery scheduling. It was agreed that True Chem's counsel would quickly solicit alternative dates for the noticed inspection and deposition. Counsel for PCC sent an email to counsel for True Chem on November 15, 2019 memorializing that discussion. (Ex. 5 at p. 3-4). Three days later, after providing no new dates for the inspection or deposition, True Chem requested an extension for its responses to the Interrogatories and Requests for Production that PCC had served on October 17, 2019. (*See* Ex. 5 at p. 3).

The next day, November 19, 2019, PCC sent True Chem an email inquiring about the requested extension and requesting the earliest possible date for the inspection of True Chem's frac trailers. True Chem's lawyers did not respond to that email. (*See* Ex. 5 at p. 1-3).

True Chem's responses to PCC's Interrogatories and Requests for Production were due on November 21, 2019. Interrogatory No. 1 asked True Chem to simply identify all of its frac trailers:

> Identify and describe in full all Accused True Chemical Trailers and all Projects during the Relevant Time Period, including documents describing each Accused True Chemical Trailer and its construction or assembly, documents concerning each Project, and revenue for each Project.

*See* Ex. 2 at p. 6.

True Chem did not serve responses or objections to the Interrogatories and Requests for Production on November 21, 2019. Following up on November 22, 2019, counsel for PCC sent counsel for True Chem an email noting that True Chem was delinquent on its discovery responses and requesting a formal meet and confer. (Ex. 5 at p. 2). True Chem responded that same day by indicating that it believed it was relieved of its discovery obligations by PCC's alleged failure to respond to True Chem discovery served prior to the *Markman* hearing, further stating that "we believe it is appropriate for PCC to first provide discovery responses … and afterwards, True Chem will provide its responses." (Ex. 5 at p. 1-2).

The discovery gamesmanship continued throughout December. True Chem's counsel did not reply to a December 4, 2020 email in which PCC's counsel advised that by pushing the inspection, the parties would also need to push the deadline to amend infringement contentions. (Ex. 14). By the time the deadline to amended infringement contentions passed on December 6, 2019, PCC still did not know how many frac trailers True Chem had built despite seeking that information through multiple discovery requests.

True Chem's counsel then took the position that the only frac trailers that were relevant for discovery purposes were those made available for inspection in 2017 in connection with the state court case and that were identified in PCC's infringement contentions from October 2018.[1]

Finally, on December 11, 2019, True Chem served belated objections and responses to PCC Interrogatories and Requests for Production. In response to Interrogatory No. 1, True Chem did not identify its frac trailers. Instead, True Chem stated that it would only provide information

---

[1] In October of 2017, PCC was permitted to inspect some of True Chem's frac trailers in connection with a then pending state court case. However, True Chem did not produce all of its frac trailers during that inspection.

concerning those trailers True Chem believed were disclosed in the October 26, 2018 infringement contentions:

> True Chem will provide non-objectionable information concerning the instrumentalities disclosed by Defendant/Counter-Plaintiff in Exhibits A-1 and A-2 of its October 26, 2018 Disclosure of Asserted Claims and Infringement Contentions under Local P.R. 3-1(c) regarding time period beginning with the issue date of the '452 Patent, December 5, 2017. True Chem will produce documents from which answers to portions of the non-objectionable scope of this interrogatory can be derived.

Ex. 6 at p. 6.

This was an apparent attempt by True Chem to avoid disclosing any new frac trailers that it had built since the 2017 inspection. This made amending the infringement contentions to identify those frac trailers impossible. Only after conferring about a telephonic discovery hearing with Court did True Chem finally agree to make its frac trailers available for inspection on January 16, 2020—more than a month after the deadline to amend infringement contentions. Disputes remained about the scope of the inspection because True Chem stated that it would produce its frac trailers for inspection only in the condition they were kept in True Chem's storage yard, rather than in operating condition with all equipment that was used in the frac trailers during normal operation. Disputes also remained about whether True Chem should be required to respond with full and complete narrative answers to PCC's Interrogatories and whether True Chem should produce more than the handful (less than 10 pages) of documents that it produced in response to PCC's Requests for Production. (*See* Ex. 7).

A hearing was held on January 15, 2020, one day before the inspection. During that hearing, True Chem's counsel asserted that "only two" frac trailers were in this case because that is all that were identified in PCC's infringement contentions and further stated it was only required

to produce the trailers as they were kept during storage, as opposed to in working condition, as requested by PCC.

During the hearing the Court instructed True Chem to produce everything in its possession, custody or control that is relevant to its use of the frac trailers. The Court also told both parties to make substantial responsive document productions by the end of January and that the Court would revisit the question of narrative answers to discovery responses after the document production deadline.

At the ensuing inspection on January 16, 2020 in Midland, it was clear that True Chem had built additional frac trailers since the 2017 inspection. Having previously asserted that only two trailers were relevant to the case, True Chem now made seven frac trailers available for inspection: T-4, T-5, T-6, T-8, T-9, T-10, and T-12. Trailer T-3 had previously been inspected in connection with the state court case but was not present at the January 16 inspection. Trailers T-1 and T-2, T-7 and T-11 were not made available and counsel for PCC subsequently represented that those trailers had been "decommissioned" at some point, apparently during the pendency of this case. (Ex. 8).

Despite the Court's instructions during the January 15, 2020 telephonic discovery hearing, True Chem did not produce everything at the inspection relevant to the operation of the frac trailers. Although the use of computer and networking equipment was evident by the mounted computer display, keyboard, antenna and cellular signal booster found in the trailers during the inspection (pictures of which are included in the amended infringement contentions attached hereto as Ex. 9 and Ex. 10); those computers and networking equipment were not made available during the January 16, 2020 inspection. PCC has served an additional notice of inspection, which is currently scheduled for March 5, 2019, to inspect that equipment. (Ex. 11).

In addition to not following the Court's instructions regarding the inspection, True Chem also produced less than 200 pages of documents by the Court's end-of-month deadline. Those documents that were produced consist of only invoices from True Chem frac jobs on which its trailers were used. There were no technical, operational or other documents produced relating to the manufacture, composition and use of the frac trailers themselves, despite the fact that instructions, checklists and guidelines for True Chem's employees were found during the inspection in binders and mounted on the walls of the True Chem trailers (which is evident in the pictures attached to the amended infringement contentions). (Ex. 12).

Following the incomplete inspection and despite the paltry document production and virtually non-existent interrogatory responses, PCC diligently worked on incorporating the new information it learned into amended infringement contentions. It finalized those and served them on True Chem on February 10, 2020, filing a notice with the Court that same day. (Ex. 13 and Dkt. No. 71, respectively). In connection with the negotiation of the recently filed Eighth Amended Scheduling Order, True Chem would not agree to allow the amended infringement contentions, requiring PCC to file this opposed motion for leave to amend.

### III.     ARGUMENT AND AUTHORITIES

This Court's scheduling order permits the application of local patent rules issued by the Eastern and Southern Districts of Texas. (Dkt. No. 74 p. 6). When considering a motion for leave to amend, courts generally require a showing of "good cause." FED. R. CIV. P. 16(b)(4). Similarly, the Local Patent Rule 3-6(b) of the Eastern District of Texas allows a party to supplement its infringement contentions "only by order of the Court, which shall be entered only upon a showing of good cause." In determining whether good cause exists in both circumstances, courts in this district consider: "(1) the explanation for the party's failure to meet

the deadline, (2) the importance of what the Court is excluding, (3) the potential prejudice if the Court allows that thing that would be excluded, and (4) the availability of a continuance to cure such prejudice." *Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015) (reviewing Local Patent Rule 3–6(b)); *see* also *S & W Enters., L.L.C. v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (setting forth the four-factor test binding within the circuit).

Each of the four factors weigh strongly in favor of allowing PCC leave to amend its infringement contentions.

### A. PCC Diligently Amended Its Infringement Contentions.

PCC served True Chem with its amended infringement contentions and notified the Court on February 10, 2020, less than one month after True Chem finally made available for inspection seven of its frac trac trailers. Many of these were not produced during the 2017 inspection in the state court case.[2]

True Chemical manufacturers and assembles its trailers according to specifications that were neither publicly available nor produced by True Chem in response to PCC's requests for production. (*See* Exs. 9-10; Dkt. No. 67 p. 1). As such PCC could exercise reasonable diligence only after these trailers were identified by True Chem and produced for inspection, which PCC did by diligently incorporating into its infringement contentions the extensive information it learned during the inspection. *See Allvoice Developments US, LLC, v. Microsoft Corp.*, No. 6:09-cv-3665, at *3-4 (E.D. Tex. June 4, 2010) (granting leave to amend where "Defendant's

---

[2] Furthermore, at least four of True Chem's trailers (T-1, T-2, T-7, and T-11) have never been produced for inspection. Counsel for True Chem subsequently represented that those trailers had been decommissioned at some point and used for parts. (*See* Ex. 8). It may be necessary for PCC to again amend its intentions when it receives from True Chem sufficient information to identify all the frac trailers is has operated.

confidential documents contained information necessary for Plaintiff to assert infringement of these additional claims").

### B. PCC's Amendments Are Important To Fully Resolve The Parties' Disputes

True Chem seeks a broad declaratory judgment that it does not infringe. As such it is unreasonable, and even contrary to True Chem's purpose, to limit this case to a subset of its frac trailers. There is a long-standing preference to resolve related disputes in a single action, and PCC should not be forced to file additional cases with respect to frac trailers that True Chem failed timely and adequately to disclose. "[I]t is important for the Court and the parties to deal with all possible infringement claims . . . in the instant case, rather than requiring additional litigation." *Commonwealth Scientific and Industrial Research Organization v. Mediatek Inc*. at 4, No. 6:12-CV-578 (E.D. Tex. Aug. 4, 2014).

PCC' amendments are also important because they further clarify its allegations in response to the Court's *Markman* Order. For example, in its amendments PCC provides disclosures addressing this Court's claim construction ruling and discussion of the elements of Claim 1 of both the '452 and '501 Patents that may include a cellular network, evidence of which PCC found during the inspection, which True Chem had not otherwise provided in discovery. (*See* Dkt. No. 64 at p.11-13; Ex. 13 at p. 4).

### C. There Is No Potential Prejudice to True Chem.

True Chem cannot claim it would be prejudiced by PCC's amendments. It has been aware that PPC has accused all of True Chem frac trailers meeting the claim elements no later than October 17, 2019, when PCC served interrogatories defining "Accused True Chemical Trailer(s)" as well as a notice to inspect all trailers on November 20, 2019. (Exs. 2-4). True Chem then agreed on October 24, 2019 to extend the deadline to serve amended infringement

contentions to December 6, 2019. Having still not been provided a date for inspection by True Chem, on December 4, 2019 counsel for PCC clearly notified True Chem that the parties would have to extend the deadline to amend as a result of True Chem's refusal to produce the accused trailers. (Ex. 14). True Chem's counsel even alerted the Court during the January 15 discovery hearing of PCC's position that it needed to conduct the inspection before amending its contentions. Amended contentions could therefore come as no surprise to True Chem.

Additionally, this Court's Eight Scheduling Order was entered on February 20, 2020 upon joint motion of the parties wherein the close of fact discovery has been extended to April 10, 2020. (Dkt. No. 74). This extension provides True Chem ample time for additional discovery, and True Chem will not be prejudiced in any way by the amended contentions served on February 10, 2020.

### D. A Continuance Is Available But Not Needed.

Pursuant to the Scheduling Order, discovery does not close for almost two months, expert reports are three months out, and the trial is more than nine months away—scheduled for December 20, 2020. (Dkt. No. 74). PPC's proposed amendments will not delay or prejudice these proceedings in any way. Although a continuance would cure any prejudice True Chem may allege, PCC does not believe that such a continuance is necessary.

### IV. CONCLUSION

For at least the reasons stated above, PCC respectfully request that the Court grant this motion for leave to amend its Infringement Contentions and provide such further relief as PCC may be justly entitled.

Dated: February 24, 2020  Respectfully submitted,

SCARDINO LLP

*/s/ Daniel R. Scardino*
Daniel R. Scardino
Texas State Bar No. 24033165
401 Congress Avenue, Suite 1540
Austin, TX 78701
Tel.: (512) 443-1667
Fax: (512) 487-7606
daniel@scardinollp.com

*Attorney for Defendant/Counter-Plaintiff*
*Performance Chemical Company*

## CERTIFICATE OF CONFERENCE

Counsel for Performance Chemical Company and counsel for True Chemical Solutions, LLC met and conferred in good faith on February 19, 2020 to resolve this matter by agreement, but no agreement could be made. Therefore, True Chemical Solutions, LLC is opposed to this motion.

*/s/ Daniel R. Scardino*
Daniel R. Scardino

## CERTIFICATE OF SERVICE

I hereby certify that, on February 24, 2020, the undersigned electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following attorneys of record:

Jaison C. John
Terry D. Morgan
JOHN AND MORGAN, P.C.
6464 Savoy Dr., Suite 600
Houston, TX 77036
jjohn@johnandmorganlaw.com
tmorgan@johnandmorganlaw.com

Miles R. Nelson
James W. Essman
SHAFER, DAVIS, O'LEARY & STOKER
700 North Grant, Ste. 201
P.O. Drawer 1552

Odessa, TX 79760-1552
mnelson@shaferfirm.com
jessman@shaferfirm.com

*Attorneys for Plaintiff/Counter-Defendant*
*True Chemical Solutions, LLC*

                              */s/ Daniel R. Scardino*
                              Daniel R. Scardino