## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| **TRUE CHEMICAL SOLUTIONS, LLC,** | § | |
| *Plaintiff* | § | |
| | § | **7:18-CV-00078-ADA** |
| **-v-** | § | |
| | § | |
| **PERFORMANCE CHEMICAL** | § | |
| **COMPANY,** | § | |
| *Defendant* | § | |

## ORDER DENYING MOTION FOR LEAVE TO
## AMEND ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Came on for consideration this date the Motion of True Chemical Solutions, LLC ("True Chem") for leave to amend answer, affirmative defenses, and counterclaims.  ECF No. 103-2. Plaintiff filed this motion on May 15, 2020, more than two years after it initiated this litigation. *See* Compl., ECF No. 1 (filed on Apr. 27, 2018). Performance Chemical Company ("PCC") filed its Response on June 1, 2020. ECF No. 111. After careful consideration of the above briefing, the Court finds that the Plaintiff has not shown any good cause to be allowed to amend its pleadings at this procedural juncture in the litigation; thus, the Motion is **DENIED**.

## I.      BACKGROUND

### A.      The Parties

The genesis of this litigation began sometime in 2017, when former PCC employees Kelly Gabriel, Travis Pitcock, Tyler Hinrichs, and others left PCC to form True Chem and compete against PCC for frac jobs. Def.'s Resp. at 3, ECF No. 111. Mr. Gabriel, True Chem's founder, President, and Manager worked at PCC, beginning in 2012, as a frac customer sales and field representative. Gabriel Dep. Ex. A, at 23:23–24:4, ECF No. 111-1. Mr. Pitcock started with PCC in 2011 and was responsible for launching PCC's fracking division, allegedly building its

first "gooseneck" frac trailer to pump chemicals for PCC's customers. Pitcock Dep. Ex. B, at 16:1–16, 105:6–106:5, Sep. 27. 2017, ECF No. 111-2; Pitcock Dep. Ex. C, at 214:10–216:6, Mar. 4, 2020, ECF No. 111-3. Critically, Mr. Pitcock became the regional manager of PCC, where he had a supervisor position over virtually every aspect of the company before he transferred the management of the frac division to Tyler Hinrichs. Pitcock Dep. Ex. C, at 221:4–20.

It is undisputed that Mr. Hinrichs was also a long-time employee of PCC who began with the PCC in 2012 and was involved in the construction of PCC's early "covered" frac trailers in 2014. Hinrichs Dep. Ex. D, at 39:11–41:10, Mar. 20, 2018, ECF No. 111-4; Hinrichs Dep. Ex. E, at 310:3–311:2, Mar. 3, 2020, ECF No. 111-5. Mr. Hinrichs apparently built or supervised the construction of five or six "covered" frac trailers for PCC. Hinrichs Dep. Ex. F, at 30:4–7, Feb. 13, 2019, ECF No. 111-6. According to their own testimony, Mr. Pitcock, the CEO of True Chem, and Mr. Hinrichs, True Chem's VP of Operations, conceded that they were "instrumental" in building PCC's frac business and constructing the "gooseneck" and "covered" frac trailers that serviced PCC's customers' wells before the filing of the Patents-in-Suit. Pitcock Dep. Ex. C, at 223:10–18; Pitcock Dep. Ex. B, at 104:8–12; Hinrichs Dep. Ex. D, at 57:11–15. The Court finds the history of these parties highly relevant to the determination of whether True Chem should have brought the claims, which they now seek to assert, earlier in this litigation. This information weighs strongly against allowing the claims to be added now.

In April 2017, PCC filed for a patent on a new type of frac trailer it developed, called an "Automated Water Treatment Trailer for Processing Multiple Fluids Simultaneously." Amend. Compl. ¶ 4.06, ECF No. 4; Fuller Dep. Ex. H, at 43:24–44:3, Feb. 27, 2020, ECF No. 111-8. This patent application issued as U.S. Patent No. 9,834,452. According to Mr. Fuller, the '452

Patent was issued to cover the automated water treatment trailer, and PCC first used this new type of frac trailer on a frac job in 2018. Fuller Dep. Ex. H, at 107:19–108:9. True Chem's long-standing awareness of the '452 Patent is established beyond debate by the fact that it was the subject of testimony and was marked as an exhibit during a *March 2018* deposition of Tyler Hinrichs (the person who now seeks to be found to be a co-inventor of the '452 Patent). Hinrichs Dep. Ex. D, at 110:18.

     **B.**    **Procedural History**

     True Chem filed its Original Complaint on April 27, 2018, against Performance Chemical Company ("PCC") seeking declaratory judgment of noninfringement and invalidity of the '452 Patent. Compl. ¶ 6. True Chem filed an Amended Complaint shortly thereafter on April 30, 2018. ECF No. 4. PCC answered the Amended Complaint in May 2018 and asserted a counterclaim for infringement of the '452 Patent. ECF No. 9. True Chem answered the counterclaim in June 2018. ECF No. 12. On September 5, 2018, after the USPTO issued the '501 Patent, PCC filed an amended answer and counterclaim asserting infringement of both patents. ECF No. 17 (withdrawn and refiled after leave granted as ECF No. 25). True Chem filed an answer to the amended counterclaim in January 2019. ECF No. 39. Therefore, True Chem's live pleadings in this case consist of its Amended Complaint (ECF No. 4) and its Answer and Affirmative Defenses (ECF No. 39). True Chem asserts that the deadline for amending its Answer and Counterclaims without leave expired on January 8, 2019. Pl.'s Mot. at 2, ECF 103-2.

     Despite the extensive history between the two parties, True Chem did not assert that Mr. Hinrichs was an inventor of the patents in the Original Complaint, nor did it add it or seek to add it when it filed its Amended Complaint. *See generally* Amend. Compl. Neither did True Chem

assert any inequitable conduct or antitrust violations even though it possessed the relevant information that would have formed the basis of these claims. *See generally id.* Further, True Chem now alleges that the "1st and 2nd Trailers" identified in its current live complaint (ECF No. 4) are not specific apparatuses that were allegedly in public use by PCC prior to filing the patents, but rather are only two "types" of frac trailers that constitute prior art that was known but not disclosed during the prosecution of patents. Pl.'s Mot. at 4. Additionally, True Chem believes PCC failed to meet its duty of candor with respect to the United States Patent and Trademark Office (USPTO) regarding PCC's public use of its own prior art frac trailers. *Id.* at 7. Consequently, True Chem filed its motion for leave to amend its answer, affirmative defenses, and counterclaims.

## II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 16(b) requires a showing of good cause to allow amendment of pleadings after the deadline to amend has passed. *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008). The good cause standard requires that the party seeking relief show that, despite its exercise of diligence, it cannot reasonably meet the scheduling deadlines. *Id.* The court has broad discretion to allow amendment of pleadings, and will consider four factors in its analysis: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.* Ultimately, the determination of whether a party should be granted leave to amend is entrusted to the sound discretion of the district court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III.    ARGUMENT

FED. R. CIV. P. 16(b) allows for parties to amend their pleadings after the deadline to amend if they show good cause. *Ohio Willow Wood Co. v. Thermo-Ply, Inc.*, No. 9:07-CV-274, 2009 WL 10677579 at *1 (E.D. Tex. Nov. 20, 2009). The good cause standard requires that the party seeking to amend show that, despite its diligence, it cannot reasonably meet the scheduling deadlines. *Fahim* 551 F.3d at 348 (5th Cir. 2008). True Chem bases its antitrust allegations on the same newly alleged facts as its inequitable conduct allegations. Antitrust claims of this type are referred to as *Walker Process* claims. This Court finds that the determination of the good cause factors applies equally in this case to both the claims for inequitable conduct and the *Walker Process* claims. Consistent with *Exergen*, this Court requires a plaintiff seeking to add allegations of inequitable conduct must establish specifically the who, what, when, where, why, and how of the alleged deception on the Patent Office to satisfy Rule 9(b). *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009) (discussing the particularity requirement of FED. R. CIV. P. 9(b)).

The Court affirmatively holds that True Chem's amended pleading is not only untimely but would not pass Rule 9(b) scrutiny under *Exergen*. True Chem does not identify any specific claims or claim limitations that were missing in the prior art that was made of record at the Patent Office or show specifically how the two "types" of frac trailers PCC used prior to filing the Patent would have filled the gaps in the record art such that the examiner would have refused issuance of the Patents. Because it would not pass Rule 9(b) scrutiny, True Chem's proposed inequitable conduct amendments are futile.

To state a claim for a *Walker Process*-type antitrust violation, the complaining party must similarly show actual fraud on the Patent Office and that the patent owner attempted to

monopolize the relevant market, in violation of the Sherman Act. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965). Not only does True Chem fail to adequately plead the element of the fraud on the Patent Office prong, but it also alleges nothing more than base and conclusory allegations regarding the antitrust elements. Pl.'s Second Amend. Answer ¶¶ 24.30–24.34, ECF No. 103-4. Moreover, the *Walker Process* claim is futile because PCC is entitled to *Noerr-Pennington* immunity from antitrust scrutiny since True Chem filed this case, and PCC's counterclaim for infringement is not objectively baseless. *United Food & Commercial Workers Unions & Employ'rs Midwest Health Benefits Fund v. Novartis Pharm. Corp.*, 902 F.3d 1, 13-16 (Fed. Cir. 2018).

Ultimately, the Court finds that True Chem cannot establish the requisite showing of good cause required by Rule 16 for its proposed out-of-time amendments, as True Chem cannot establish that it only recently became aware of the underlying facts that gave rise to these claims and defenses. True Chem had access to the information concerning exactly how PCC's frac trailers worked prior to the initiation of this litigation because, prior to leaving PCC, the founders of True Chem were the PCC employees that built and operated the frac trailers. Moreover, Mr. Hinrichs and True Chem were obviously aware of the existence and content of PCC's '452 Patent before True Chem filed this lawsuit.

## IV.   Conclusion

As True Chem has unsatisfactorily explained the failure to timely move for leave to amend and since such proposed amendments would be futile, it is **ORDERED** that True Chem's motion for leave to amend answer, affirmative defenses, and counterclaims be **DENIED.**

**SIGNED and ENTERED** this the 24th day of June 2020.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE