```
 1                  UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF TEXAS
 2                   MIDLAND-ODESSA DIVISION

 3  TRUE CHEMICAL            ) Docket No. MO 18-CA-078 ADA
    SOLUTIONS, LLC           )
 4                           )
    vs.                      ) Midland, Texas
 5                           )
    PERFORMANCE CHEMICAL     )
 6  COMPANY                  ) February 24, 2021

 7

          TRANSCRIPT OF VIDEOCONFERENCE MOTION HEARING
 8           BEFORE THE HONORABLE ALAN D. ALBRIGHT

 9  APPEARANCES:

10  For the Plaintiff:       Mr. Jaison C. John
                             Mr. Terry D. Morgan
11                           John & Morgan, P.C.
                             6464 Savoy Drive, Suite 600
12                           Houston, Texas 77036

13                           Mr. Masood Anjom
                             Mr. Louis Liao
14                           Ahmad, Zavitsanos, Anaipakos,
                             Alavi & Mensing, PC
15                           1221 McKinney Street, Suite 2500
                             Houston, Texas 77010

16

17

18  For the Defendant:       Mr. Daniel Scardino
                             Scardino, LLP
19                           501 Congress Avenue, Suite 150
                             Austin, Texas 78701

20

21

22

23

24

25
```

1  **(Appearances Continued:)**

2  For the Defendant:          Ms. Paige A. Amstutz
                               Ms. Robyn L. B. Hargrove
3                              Scott, Douglass & McConnico, LLP
                               303 Colorado Street, Suite 2400
4                              Austin, Texas 78701

5  Court Reporter:             Ms. Lily Iva Reznik, CRR, RMR
                               501 West 5th Street, Suite 4153
6                              Austin, Texas 78701
                               (512)391-8792

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Proceedings reported by computerized stenography,
    transcript produced by computer-aided transcription.

| | | |
|---|---|---|
| 08:01:31 | 1 | THE CLERK:  Court calls Midland case: |
| 08:01:36 | 2 | 7:18-CV-78, <u>True Chemical Solutions, LLC vs. Performance</u> |
| 08:01:42 | 3 | <u>Chemical Company</u>, for a motion hearing. |
| 08:01:44 | 4 | THE COURT:  Good morning. |
| 08:01:44 | 5 | If I could hear -- give me one second.  If I can |
| 08:01:47 | 6 | hear announcements from counsel, please. |
| 08:01:52 | 7 | MR. SCARDINO:  Sure. |
| 08:01:52 | 8 | This is Daniel Scardino here for Performance |
| 08:01:56 | 9 | Chemical Company, together with Robyn Hargrove, who will |
| 08:02:00 | 10 | be arguing today for Performance Chemical Company. |
| 08:02:04 | 11 | MS. HARGROVE:  And, your Honor, we also have |
| 08:02:06 | 12 | Paige Amstutz here, as well. |
| 08:02:07 | 13 | THE COURT:  Okay.  And for True Chem? |
| 08:02:17 | 14 | MR. LIAO:  Morning, your Honor. |
| 08:02:18 | 15 | This is Louis Liao for True Chem.  We're actually |
| 08:02:24 | 16 | waiting on Mr. John.  I don't know where he is, but Masood |
| 08:02:28 | 17 | Anjom is also on this call. |
| 08:02:29 | 18 | THE COURT:  Okay.  Who's going to be arguing on |
| 08:02:32 | 19 | behalf of True Chem? |
| 08:02:33 | 20 | MR. LIAO:  We expect Mr. John to argue, but if I |
| 08:02:36 | 21 | have to, then I guess so. |
| 08:02:40 | 22 | THE COURT:  My problem is ordinarily -- |
| 08:02:43 | 23 | THE CLERK:  He's right there. |
| 08:02:44 | 24 | THE COURT:  Okay.  There he is.  Good morning. |
| 08:02:54 | 25 | THE CLERK:  Mr. John, would you like to make your |

| | | |
|---|---|---|
| 08:02:57 | 1 | appearance to the Court?  The Court's ready to proceed. |
| 08:03:01 | 2 | MR. JOHN:  Thank you.  This is Jaison John for |
| 08:03:03 | 3 | True Chemical. |
| 08:03:06 | 4 | MR. MORGAN:  This is Terry Morgan for True |
| 08:03:08 | 5 | Chemical, also. |
| 08:03:09 | 6 | THE COURT:  Good morning. |
| 08:03:10 | 7 | It's True Chem's motion.  I'll hear from you, Mr. |
| 08:03:13 | 8 | John. |
| 08:03:17 | 9 | MR. JOHN:  Your Honor, I'm happy to begin.  Thank |
| 08:03:20 | 10 | you. |
| 08:03:21 | 11 | This is emergency motion filed by PCC, but if the |
| 08:03:28 | 12 | Court desires, I'm happy to begin. |
| 08:03:33 | 13 | MS. HARGROVE:  Your Honor, it's our motion, we're |
| 08:03:35 | 14 | also happy to start out. |
| 08:03:37 | 15 | THE COURT:  I think the way I'm thinking about it |
| 08:03:38 | 16 | is, I know -- I'd like to hear from Mr. John why we |
| 08:03:43 | 17 | shouldn't transfer it.  I've read the motion.  Mr. John, |
| 08:03:46 | 18 | if you'd like to tell me why you think we should not |
| 08:03:49 | 19 | transfer, I'm happy to hear that, and I'll hear from Ms. |
| 08:03:51 | 20 | Hargrave. |
| 08:03:53 | 21 | MR. JOHN:  Thank you, your Honor. |
| 08:03:54 | 22 | So, your Honor, this case involves frac trailers |
| 08:03:59 | 23 | that are built and located in Midland, primarily operating |
| 08:04:04 | 24 | in the Midland area and in the Permian Basin area, and |
| 08:04:11 | 25 | both parties are based in Midland.  Their employees are in |

| | | |
|---|---|---|
| 08:04:17 | 1 | Midland.  The customers primarily operate in the Midland |
| 08:04:20 | 2 | area.  The witnesses in this case are overwhelmingly from |
| 08:04:26 | 3 | Midland, and I'll address that in a moment.  The case was |
| 08:04:29 | 4 | filed in Midland.  This case was litigated over three |
| 08:04:36 | 5 | years in Midland and without any objection from PCC until |
| 08:04:40 | 6 | the eve of trial. |
| 08:04:42 | 7 | Neither party has any operations in Midland and |
| 08:04:47 | 8 | there are no witnesses -- I'm sorry.  Neither party has |
| 08:04:51 | 9 | operations in Waco. |
| 08:04:52 | 10 | THE COURT:  All right.  Mr. John, let me ask |
| 08:04:56 | 11 | because I'm about to go, actually, and sit in trial.  So |
| 08:05:00 | 12 | let me speed you along just a little bit here, if I can. |
| 08:05:02 | 13 | Here's -- you're absolutely right.  I understand |
| 08:05:06 | 14 | everything you just said about the parties, where the |
| 08:05:08 | 15 | parties are, where -- and all that.  This is a question, |
| 08:05:14 | 16 | though, over convenience, I think, with an intra-district |
| 08:05:22 | 17 | transfer.  The question -- and I get it.  Midland has an |
| 08:05:26 | 18 | interest.  I understand. |
| 08:05:28 | 19 | But if you could address your opposing counsel's |
| 08:05:31 | 20 | argument that for the benefit of witnesses and getting |
| 08:05:35 | 21 | them to trial at Waco would be better, if you could |
| 08:05:38 | 22 | address that specifically. |
| 08:05:40 | 23 | MR. JOHN:  Your Honor, there are 17 fact |
| 08:05:44 | 24 | witnesses in this case, and PCC seem to ignore some of the |
| 08:05:49 | 25 | party witnesses, but there are 17 fact witnesses. |

08:05:51   1   Fourteen of those fact witnesses live in the Midland area,

08:05:57   2   three are elsewhere, but none of them are in Waco.  The

08:06:00   3   Court will lose subpoena power on a majority of the fact

08:06:04   4   witnesses if the trial were in Waco.  The Court will not

08:06:08   5   gain any subpoena power in Waco.

08:06:13   6          And I can show the Court a document that lists

08:06:19   7   the witnesses, and the Court can see, you know, where the

08:06:24   8   convenience of these witnesses stand, if I may.

08:06:27   9          THE COURT:  Yes.  Please.

08:06:31   10          Here's the issue -- and I get, again, the folks

08:06:40   11   that are starting with Fuller and through Gabriel, those

08:06:44   12   are all under the control of the parties, right?

08:06:48   13          MR. JOHN:  That's correct, your Honor.

08:06:48   14          THE COURT:  Okay.  And so, our real question here

08:06:51   15   is, the witnesses who live in Kerrville, Fort Worth,

08:07:01   16   Midland-Odessa, Tomball, and then, the others, I see, as

08:07:07   17   well.  Okay.

08:07:13   18          MR. JOHN:  So.

08:07:13   19          THE COURT:  Yes, sir.

08:07:14   20          MR. JOHN:  Your Honor, so these other witnesses,

08:07:18   21   many of them are going to be in the subpoena power of the

08:07:20   22   Midland court.  And further, as you can see, all these

08:07:24   23   witnesses, majority of them are from the Midland area, so

08:07:28   24   they're not going to require much travel.  And that's the

08:07:31   25   other issue that PCC had brought up.  The COVID-related

08:07:37  1  pandemic issues.  But having the trial in Midland will

08:07:42  2  allow the case to conform more to the CDC requirements

08:07:47  3  because it avoids unnecessary travel.  The witnesses can

08:07:50  4  remain mostly at home until called to trial.

08:07:53  5          Otherwise, every single witness, your Honor, will

08:07:55  6  have to travel to Waco and get hotel rooms, and that's a

08:08:02  7  safety issue.  And I just want to express to the Court

08:08:06  8  that it's not True Chemical's burden to show that Midland

08:08:14  9  is better.  The heavy burden is -- as case law states is

08:08:19  10  on PCC.  And the convenience of the parties clearly

08:08:26  11  indicate whether they're party witnesses under the party's

08:08:28  12  control or not, they're all in Midland.  And the case has

08:08:34  13  proceeded fine in Midland.

08:08:36  14          PCC does cite to the Intel --

08:08:41  15          LAW CLERK:  Talking about letting them know that

08:08:42  16  we would have more time for trial if we did it here than

08:08:45  17  in Midland.  I don't know if you want to do that.

08:08:48  18          THE COURT:  Ms. Hargrove.

08:08:51  19          MS. HARGROVE:  Yes, your Honor.  I'm going to

08:08:53  20  dive straight into this question of witnesses.  And I'm

08:08:56  21  happy to address other factors that your Honor feels are

08:08:59  22  important.  But on this question of where the witnesses

08:09:02  23  are located, the nonparty witnesses here, your Honor, are

08:09:06  24  not in Midland area.  And I can show -- and it's important

08:09:11  25  to correct that because we seem to have a bit of a

| | | |
|---|---|---|
| 08:09:14 | 1 | disagreement. |
| 08:09:16 | 2 | But the exhibits that we presented in support of |
| 08:09:19 | 3 | our motion, our Exhibit D, Mr. Scardino's declaration |
| 08:09:27 | 4 | proved up the location of all these witnesses.  And I'm |
| 08:09:31 | 5 | sorry, I'm taking a moment because I want to pull up and |
| 08:09:34 | 6 | share my screen and show that to the Court. |
| 08:09:36 | 7 | THE COURT:  Okay. |
| 08:09:37 | 8 | MS. HARGROVE:  Can you see that? |
| 08:09:39 | 9 | THE COURT:  Yes, ma'am. |
| 08:09:40 | 10 | MS. HARGROVE:  Listing?  Okay.  Great. |
| 08:09:42 | 11 | THE COURT:  I can only see -- |
| 08:09:45 | 12 | MS. HARGROVE:  Yeah.  Let me see if I can try to |
| 08:09:48 | 13 | -- there we go.  Make it legible and yet, all in one |
| 08:09:52 | 14 | screen. |
| 08:09:53 | 15 | So here, we have a listing of the individuals who |
| 08:09:56 | 16 | are on both parties' may-call live or will-call live |
| 08:10:00 | 17 | lists.  You will see that all of those -- none of those |
| 08:10:07 | 18 | parties are in Midland.  None of these witnesses are in |
| 08:10:09 | 19 | Midland.  The one individual who is closest to Midland is |
| 08:10:12 | 20 | Mr. Jeffrey McMahon.  He is a PCC contractor who has |
| 08:10:15 | 21 | indicated he will voluntarily come to trial, if needed. |
| 08:10:20 | 22 | None of the remaining witnesses are subject -- are within |
| 08:10:26 | 23 | 100 miles of Midland.  The rest of them are dramatically |
| 08:10:30 | 24 | closer to Waco than to Midland. |
| 08:10:34 | 25 | So to the extent the Court would be subpoenaing |

08:10:36  1   those witnesses, it still may do so under Federal Rule

08:10:42  2   45(c); but because they're more than 100 miles, the

08:10:45  3   relative distance and, therefore, the cost to the

08:10:48  4   witnesses becomes relevant to the subpoena analysis.  And

08:10:51  5   so, for those remaining 10 individuals, the Court's

08:10:56  6   subpoena power over those individuals is greater.

08:10:58  7          Now, the most important factor of which I'm sure

08:11:02  8   you're well aware, your Honor, is this question of the

08:11:06  9   convenience of these third-party witnesses.  Not the party

08:11:09  10  witnesses, but the third party.  If you look at the

08:11:12  11  cumulative distance of these individuals, how far they are

08:11:16  12  from the Waco courthouse versus the Midland courthouse,

08:11:19  13  there's a cumulative over a 2,100-mile difference there of

08:11:25  14  travel time.

08:11:27  15         And that's really significant right now because

08:11:31  16  it impacts their ability to travel by car, instead of by

08:11:35  17  plane.  It impacts whether or not they may be able to do

08:11:38  18  this in a day trip, instead of having to stay overnight in

08:11:41  19  a hotel.  It impacts expense, it impacts how much time

08:11:45  20  they take off work, and it impacts their overall potential

08:11:52  21  COVID exposure.  So these are of particular importance in

08:11:54  22  the situation we find ourselves today with the pandemic.

08:11:57  23         And I do want to correct as to a few of these

08:12:00  24  witnesses, True Chemical is claiming that they are located

08:12:03  25  in Midland, rather than Waco, but as we have proved up

| | | |
|---|---|---|
| 08:12:07 | 1 | through Mr. Scardino's declaration, Jose Luna is now |
| 08:12:13 | 2 | located in Fort Worth.  He is not in Midland.  You'll see |
| 08:12:16 | 3 | that on here.  B&H is the newly identified party with |
| 08:12:24 | 4 | information regarding the automation of frac trailers. |
| 08:12:28 | 5 | That entity by the Secretary of State filings, we can see |
| 08:12:32 | 6 | that entity is out at Houston, and we would be |
| 08:12:34 | 7 | anticipating that would be a corporate rep.  So the |
| 08:12:36 | 8 | location of the entity, not just the registered agent for |
| 08:12:40 | 9 | service of process, but the entity itself is Houston. |
| 08:12:43 | 10 | We've got -- there were two individuals, Matthew |
| 08:12:47 | 11 | Sanchez and Michael Herd, who True Chemical has mentioned, |
| 08:12:51 | 12 | those are folks who have never been disclosed before in |
| 08:12:54 | 13 | this case.  They're not on either side's witness lists. |
| 08:12:57 | 14 | They're mentioned because they're affiliated apparently in |
| 08:13:00 | 15 | some way with Integrity Industries and PfP Industries, and |
| 08:13:05 | 16 | they happen to be employees located in the Midland area |
| 08:13:08 | 17 | but -- |
| 08:13:08 | 18 | THE COURT:  Ms. Hargrove. |
| 08:13:10 | 19 | MS. HARGROVE:  Yes, sir. |
| 08:13:11 | 20 | THE COURT:  Let me assure you, if they haven't |
| 08:13:13 | 21 | been disclosed before then, they're not going to be |
| 08:13:15 | 22 | traveling either to Waco or to the courthouse in Midland, |
| 08:13:18 | 23 | wherever we wind up.  So I have pretty strong feelings |
| 08:13:23 | 24 | about witnesses, when witnesses should be disclosed.  But |
| 08:13:28 | 25 | your point's taken. |

| | | |
|---|---|---|
| 08:13:29 | 1 | Let me -- here's where I see the balance.  Mr. |
| 08:13:33 | 2 | John, if you'll respond to this.  I certainly understand |
| 08:13:36 | 3 | your point you've got X number of witnesses that are from |
| 08:13:40 | 4 | the plaintiff and Y number from the defendant, and they |
| 08:13:43 | 5 | appear to be mostly, if not all, in the Midland area.  I |
| 08:13:47 | 6 | get your argument that they won't have to travel.  I will |
| 08:13:51 | 7 | tell you, though, I am persuaded that for the safety of |
| 08:13:55 | 8 | the nonparty witnesses, Waco would be better.  And then, |
| 08:14:01 | 9 | let me say one more thing here.  Let me ask you first. |
| 08:14:04 | 10 | Mr. John, have I given you all a number of hours |
| 08:14:06 | 11 | for trial in this case? |
| 08:14:08 | 12 | MR. JOHN:  Yes, you have. |
| 08:14:09 | 13 | THE COURT:  And what was it? |
| 08:14:10 | 14 | MR. JOHN:  It was 10 hours. |
| 08:14:12 | 15 | THE COURT:  Okay.  That's what I recall.  If you |
| 08:14:15 | 16 | guys think that you're going to be able to put on, what is |
| 08:14:21 | 17 | it, how many would you say, Mr. John, 17 witnesses? |
| 08:14:24 | 18 | MR. JOHN:  Yes, sir. |
| 08:14:25 | 19 | THE COURT:  In that period of time, one or all of |
| 08:14:28 | 20 | you will be magicians in my opinion because I see |
| 08:14:36 | 21 | absolutely no way we're going to have this number of |
| 08:14:38 | 22 | people in that amount of time.  And so, that's, I guess, |
| 08:14:45 | 23 | for another day.  But, you know, in the trial I'm in right |
| 08:14:50 | 24 | now, we've -- you know, I think they're going to have a |
| 08:14:54 | 25 | total of maybe eight witnesses and they have two patents, |

08:14:57  1   and they had more time than you did.  So it's -- y'all are

08:15:02  2   going to have to really do some magic to get that many

08:15:05  3   witnesses on.

08:15:05  4           But address this, Mr. John.  This is where I'm

08:15:08  5   ultimately going to have to come down.  How do -- is there

08:15:13  6   case law that tells me what I do if I think that at this

08:15:22  7   point -- and there may or may not be because we've only

08:15:26  8   been dealing with COVID for a limited amount of time and I

08:15:28  9   think it is a factor here.

08:15:31  10          Is there case law that tells me not just with

08:15:35  11  regard to the ability of the court to get someone

08:15:39  12  somewhere or all that, but is there case law that explains

08:15:43  13  balancing that I could do here and tells me what I should

08:15:47  14  do?  I'm spotting you that I think the majority of people

08:15:51  15  from who are parties would be in Midland, I think the

08:15:57  16  opposite is true of the nonparty witnesses.  I think it

08:16:01  17  would be easier to get the nonparty witnesses to require

08:16:08  18  them to attend.

08:16:09  19          So tell me -- I'll give you an opportunity to

08:16:11  20  tell me how I balance that to come out, and I'll give Ms.

08:16:16  21  Hargrove the same opportunity.

08:16:17  22          MR. JOHN:  Your Honor, case law says that the

08:16:20  23  time to challenge venue is not at the end of the trial,

08:16:25  24  but right before trial.  Not at the end of the case.

08:16:28  25          THE COURT:  This isn't venue.  This is the

08:16:30  1  convenience of the parties.  And in this case, I'm also

08:16:36  2  dealing with -- which I just did.  I moved the case from

08:16:39  3  Austin to Waco.  They're not open in Austin.  I get that

08:16:44  4  they are open in Midland.

08:16:45  5       But part of the logic I'm using is -- and this is

08:16:50  6  what I want you to focus on is.  I see it as a -- I have

08:16:55  7  to do a balancing between the people who live in Midland

08:16:59  8  who are primarily party witnesses and over whom you have

08:17:04  9  control and their safety, and the balancing of the

08:17:08  10  interests of the nonparty witnesses and my ability to

08:17:12  11  control.  And, so, that's where I would ask you to focus

08:17:16  12  your attention.

08:17:17  13       MR. JOHN:  Okay, your Honor.  Even with the

08:17:20  14  convenience issue, the only change that could possibly

08:17:28  15  happen right now is because of the COVID issue.  Well, if

08:17:31  16  that's the case, I want to address some of the issues that

08:17:40  17  Ms. Amstutz brought up about the third-party witnesses.

08:17:44  18  They had asked for corporate representatives of PRRO

08:17:49  19  Water, Integrity Industries and PfP.  The corporate

08:17:52  20  representatives that have dealt with True Chem that could

08:17:59  21  possibly be related to anything in this case, they're all

08:18:03  22  located in Midland, your Honor.  And the example, the B&H

08:18:10  23  Industries, that was just a registered agent that --

08:18:14  24       THE COURT:  Mr. John, why don't -- I want you to

08:18:17  25  address my question.  The defendant -- I'm sorry.  Ms.

08:18:23   1   Hargrove's client gets to pick the witnesses they think

08:18:26   2   are best for trial, and you get to pick the witnesses you

08:18:28   3   think are best.  I want you to address my question, not

08:18:32   4   whether or not you think there's merit in selecting and

08:18:35   5   calling those people.

08:18:37   6           What I'm asking you now -- I'm assuming if you

08:18:39   7   all have all these people on this list, you acted in good

08:18:44   8   faith in exchanging this list with each other, and you

08:18:47   9   really do plan to call all these people.  Again, I can't

08:18:51   10  imagine how that could be accomplished, but I'm assuming

08:18:57   11  that the exchange of the will-call or may-call-live list

08:19:01   12  was done in good faith.

08:19:03   13          And so, I want you to address how I balance what

08:19:07   14  I do between the party witnesses and the nonparty

08:19:11   15  witnesses.

08:19:12   16          MR. JOHN:  Well, your Honor, the Intel case, as

08:19:16   17  you mentioned, the choice there was to have a trial in

08:19:21   18  Waco or not have a trial at the foreseeable future because

08:19:25   19  the Austin court was closed.  We don't have that problem

08:19:27   20  here, your Honor.

08:19:29   21          Holding the case in Midland, it would comply more

08:19:34   22  with the CDC regulations, not just because of the party

08:19:39   23  witness versus the third-party witnesses.  We contend that

08:19:44   24  maybe the third-party witnesses are closer to Midland and

08:19:48   25  within subpoena power of Midland.  None of them are in the

08:19:52  1    subpoena power of Waco.  And everyone will have to travel

08:19:55  2    to Waco, whether they're party witnesses or not.

08:19:57  3         If COVID is the concern and safety is the

08:20:00  4    concern, it doesn't matter whether it's party witnesses or

08:20:03  5    not party witnesses.  We're talking about 17 witnesses

08:20:07  6    that would have to travel where a case the trial in

08:20:12  7    Midland would provide an opportunity for most people not

08:20:15  8    to travel.  And that itself -- and that's the only issue

08:20:19  9    right now would justify moving the trial, it's the COVID

08:20:25  10   issue, because, otherwise, the time to challenge for

08:20:27  11   convenience venue challenge is way over, three years.

08:20:33  12   It's been almost three years.

08:20:34  13        And also, the Court has been implementing its

08:20:40  14   COVID protocol for months now, and PCC never addressed or

08:20:44  15   complained about the venue at that time.  Only at the eve

08:20:48  16   of trial is PCC now asking to move the trial, and it leads

08:20:53  17   me to believe that rather than safety issues, this may be

08:20:57  18   an attempt at a strategy for PCC because even -- safety

08:21:08  19   issue, the code issue's the only justification to even

08:21:14  20   contemplate moving the trial.  But when you have 17

08:21:16  21   witnesses and 14 of them are closer to Midland, I think

08:21:21  22   safety issues point to holding the trial in Midland.

08:21:29  23        THE COURT:  Ms. Hargrove.

08:21:31  24        MS. HARGROVE:  Yes, your Honor.

08:21:32  25        In terms of what the case law says about weighing

08:21:36   1   sort of party witnesses versus nonparty witnesses, it's
08:21:40   2   quite clear that the convenience and interests and, I
08:21:43   3   would say here, safety of nonparty witnesses is the more
08:21:47   4   important factor.  I could point your Honor to your recent
08:21:51   5   opinions.
08:21:52   6        And I apologize if I'm butchering how you say
08:21:55   7   these names, but the Kuster vs. Western Digital case, the
08:21:59   8   STC vs. Apple case, which also is citing the Fed Circuit
08:22:05   9   in In Re: Genentech at 566 F. 3d, 1338.  All of these
08:22:10   10  cases say that the convenience and interests of the
08:22:12   11  nonparties are given more weight and more consideration
08:22:17   12  than the convenience of the parties.  And this makes
08:22:21   13  sense.  All parties will be inconvenienced by a trial, no
08:22:24   14  matter where that trial takes place.
08:22:30   15       In terms of our failure -- what's characterized
08:22:33   16  as our failure to move to transfer venue until recently,
08:22:36   17  absolutely, we did not move to transfer venue until
08:22:39   18  recently: that was because of quite extraordinary and
08:22:46   19  unusual circumstances related to the pandemic, is because
08:22:48   20  of the fact that this is a patent infringement case among
08:22:51   21  competitors in which we are seeking injunctive relief, and
08:22:54   22  it is of critical importance to our client to secure a
08:22:57   23  timely and safe trial setting.
08:23:01   24       And I'm sure the Court recalls that in December,
08:23:04   25  we held a hearing in this matter in which the Court

08:23:07  1  indicated that we would be holding trial in Waco.
08:23:10  2  Everyone seemed fine and on board with that.  And so, PCC
08:23:13  3  had assumed for a period of time that we would be holding
08:23:17  4  trial in Waco.  True Chem at the same time went and moved
08:23:23  5  for continuance of that trial setting, then did object to
08:23:26  6  holding trial in Waco.  And so, after that continuance was
08:23:30  7  granted that, at that point, we went ahead and moved to
08:23:33  8  transfer venue.
08:23:34  9       So this is not some kind of a mysterious, you
08:23:38  10  know, waiting to secure advantage at the end situation.
08:23:41  11  These are just unusual -- we are all living in what
08:23:44  12  sometimes feels like an alternative universe right now,
08:23:47  13  unusual circumstances.  In terms of safety, I don't think
08:23:52  14  it could reasonably be suggested that the Waco courthouse
08:23:56  15  isn't one of the best equipped courthouses around to hold
08:24:01  16  a -- try an in-person jury trial during COVID.  Your Honor
08:24:05  17  has, from what I can tell already, conducted several of
08:24:09  18  those trials.  You're doing so right now.
08:24:12  19       I've reviewed the detailed opinion that was -- or
08:24:14  20  order that you entered in this Intel case listing all of
08:24:20  21  the protocols that would be undertaken in the COVID -- in
08:24:23  22  the Waco courthouse, specifically using the layout of the
08:24:26  23  Waco courthouse specifically to promote the safety of the
08:24:29  24  parties and the witnesses.  And so, there is no
08:24:34  25  dispositive factor here.  But if you weigh all of these

08:24:37  1   factors in light of the unusual situation in which we find

08:24:42  2   ourselves, those factors, the balance clearly points to

08:24:47  3   having trial in Waco.

08:24:50  4           MR. JOHN:  Your Honor, may I address some of

08:24:51  5   those points?

08:24:53  6           THE COURT:  Of course.

08:24:54  7           MR. JOHN:  Your Honor, as far as convenience of

08:24:56  8   third parties concerned, it is important.  We're not

08:24:59  9   disputing that.  However, PCC has known for months about

08:25:05  10  the convenience issues of the third parties, and they

08:25:08  11  didn't bring it up until right now.  Why is it suddenly,

08:25:12  12  that's important?

08:25:13  13          Well, one of their reasons that they do cite is

08:25:16  14  the Intel case.  Well, the Intel case was originally filed

08:25:21  15  in Waco, your Honor, and then, there was transfer, and

08:25:24  16  then, it was re -- that case law does support revisiting

08:25:27  17  and re -- you know, going back, undoing a transfer.

08:25:33  18  That's different from what we have here.  This case was

08:25:35  19  never filed in Waco.  And the convenience issue was not

08:25:39  20  brought up at all, and the time to bring that up is not at

08:25:44  21  the eve of trial.

08:25:45  22          And holding the court -- the trial in Midland is

08:25:50  23  not going to affect the trial setting.  In fact, we

08:25:53  24  already had a trial setting.  The Court had a scheduling

08:25:56  25  conflict, but the Midland trial was going to go forward.

| | | |
|---|---|---|
| 08:26:02 | 1 | So the timeliness, it's not an issue here.  And also, the |
| 08:26:06 | 2 | sudden interest in timeliness is curious because PCC had |
| 08:26:11 | 3 | agreed on multiple occasions to adjust the scheduling |
| 08:26:15 | 4 | order and push the trial back.  Both parties had agreed on |
| 08:26:18 | 5 | that and had amended the scheduling order many times |
| 08:26:21 | 6 | during the case. |
| 08:26:22 | 7 | The other issue is, there's no evidence that the |
| 08:26:27 | 8 | -- presented by PCC that the Midland court is worse off |
| 08:26:32 | 9 | with regard to safety than the Waco court.  And other than |
| 08:26:37 | 10 | attorney arguments about how something is more medically |
| 08:26:41 | 11 | better or not, without any evidence, you know, it's -- the |
| 08:26:46 | 12 | evidence is simply not there.  The Midland court is |
| 08:26:50 | 13 | operating and PCC was well aware of the -- all the Western |
| 08:26:54 | 14 | District protocols that had been implemented.  Whereas the |
| 08:26:57 | 15 | Austin court is closed, Midland court is operational and |
| 08:27:01 | 16 | the Waco court is operational. |
| 08:27:03 | 17 | However, this case has nothing to do with Waco, |
| 08:27:06 | 18 | your Honor.  This just comes out of nowhere.  And lastly, |
| 08:27:10 | 19 | the parties did not concede and agree to Waco in the |
| 08:27:14 | 20 | previous hearing, as Ms. Amstutz suggested.  The Court had |
| 08:27:21 | 21 | basically instructed the parties that it was going to be |
| 08:27:27 | 22 | in Waco.  We never really agreed. |
| 08:27:31 | 23 | THE COURT:  Ms. Hargrove, anything else? |
| 08:27:34 | 24 | MS. HARGROVE:  Just a couple of brief points. |
| 08:27:36 | 25 | One is that timeliness is absolutely an issue here.  I |

08:27:41  1  don't see how you could dispute that in order to get a

08:27:45  2  setting in Midland, you're going to be coordinating

08:27:47  3  multiple court dockets and calendars.  It will be up Judge

08:27:51  4  Counts when a trial setting can be obtained.  And, you

08:27:55  5  know, in terms of the legal analysis, just briefly, we've

08:27:59  6  cited the Court to many cases in our reply showing courts

08:28:04  7  considering circumstances that have arisen after filing of

08:28:08  8  the lawsuit.

08:28:08  9       Venue law in 1404(a) law does not require the

08:28:14  10 Court to engage in a fictional analysis, and that is

08:28:18  11 particularly the case because this is a convenience and

08:28:21  12 justice inquiry in which the court has considerable

08:28:25  13 discretion, especially for an intra-district transfer like

08:28:28  14 this one is.  And in fact, even the -- one of the seminal

08:28:34  15 cases on this, the Volkswagen I case, which is 374 F. 3d

08:28:41  16 201, is an example of a case -- it wasn't a retransfer

08:28:44  17 situation, but it's an example of a case where once

08:28:47  18 third-party defendants were added, the court said it was

08:28:50  19 obligated in this convenience analysis to consider the

08:28:54  20 changed nature of the lawsuit.

08:28:55  21      So there is a lot of authority out there

08:28:59  22 supporting the Court's ability to consider the state of

08:29:02  23 the world as it really exists in reality today.  We don't

08:29:06  24 have to engage in a fiction and put on blinders and not

08:29:09  25 consider the fact that we're all enduring a pandemic right

08:29:12  1  now.  The Court has considerable discretion.  And then,

08:29:18  2  with that, I'll stop unless you have questions, your

08:29:21  3  Honor.

08:29:21  4          MR. JOHN:  Your Honor, may I address that?

08:29:23  5          THE COURT:  Of course.

08:29:24  6          MR. JOHN:  Your Honor, with regard to the

08:29:26  7  Volkswagen case, PCC has to show that the Waco trial would

08:29:33  8  be clearly more convenient, and I don't believe they have

08:29:37  9  shown that.  We listed the number -- the total number of

08:29:43  10  witnesses, including third-party witnesses that are closer

08:29:45  11  to Midland and won't have to get hotel rooms in Waco.

08:29:48  12          Also, Volkswagen requires that all reasonable

08:29:53  13  inferences and all factual conflicts are resolved in favor

08:29:58  14  of the nonmoving party, which is True Chem.  So I don't

08:30:05  15  think Volkswagen supports the PCC's position.

08:30:08  16          And as far as the, you know -- Ms. Amstutz's

08:30:16  17  statement we have to deal with what's in the real world,

08:30:18  18  yes, let's do that, your Honor.  What's in the real world

08:30:20  19  is, there is a pandemic, and since CDC has definitely

08:30:25  20  recommended that travel be limited, hotel stays, things

08:30:29  21  like that, can cause problems.

08:30:34  22          The Court would be better off holding the case --

08:30:37  23  holding the trial in Midland with regard to what is going

08:30:40  24  on with the pandemic right now, and there's no evidence

08:30:43  25  that the Midland court is not capable of holding a safe

08:30:50  1    trial.  In fact, it's doing so.  Because this case has

08:30:55  2    nothing to do with Waco, there was never any parties in

08:30:59  3    Waco, there was nothing happening in Waco with regard to

08:31:02  4    this trial, Midland is the better place to hold this

08:31:08  5    trial.

08:31:10  6            THE COURT:  Ms. Hargrove, anything else?

08:31:14  7            MS. HARGROVE:  The fact that the parties are in

08:31:16  8    Midland is one of several factors.  The balance of these

08:31:18  9    factors clearly favors Waco here, not only in light of the

08:31:23  10   pandemic but, also, in light of the location of the

08:31:25  11   third-party witnesses, the location of the documentary

08:31:29  12   proof, and so forth.  But in particular, we're not trying

08:31:34  13   to say it's impossible -- it's physically impossible to

08:31:37  14   have a trial in Midland, but that's not the burden.

08:31:40  15           The burden is to show that the balance of the

08:31:42  16   factors favors Waco.  And there's no question that this

08:31:47  17   court has undertaken significant effort in order to figure

08:31:52  18   out how to safely hold or hold a trial as safely as

08:31:57  19   humanly possible in the Waco courthouse.  So these

08:32:01  20   factors, balanced as a whole, strongly and clearly favor

08:32:04  21   trial in Waco.

08:32:07  22           MR. JOHN:  Your Honor, may I address?

08:32:09  23           THE COURT:  Only if you're going to say something

08:32:12  24   I haven't heard.

08:32:13  25           MR. JOHN:  I want to address the factors, your

08:32:15  1    Honor.  The factors on balance did not favor moving to

08:32:21  2    Waco.  The relative ease of access to sources of proof,

08:32:27  3    your Honor, all of the accused trailers are in the Midland

08:32:30  4    area.  All the sales, marketing, technical information,

08:32:33  5    employment information, everything is in Midland,

08:32:36  6    availability of compulsory process.

08:32:38  7         THE COURT:  Mr. John, I don't understand what you

08:32:41  8    mean by that.  What do you mean they're in Midland?  Are

08:32:46  9    you bringing that stuff into the courtroom?

08:32:50  10        MR. JOHN:  Your Honor, the evidence, the accused

08:32:53  11   product is in Midland.

08:32:53  12        THE COURT:  I understand that.  The accused

08:32:59  13   product I'm dealing with in the trial right now is -- what

08:33:01  14   difference does it make if the accused product -- if the

08:33:04  15   accused product is in Midland?

08:33:08  16        MR. JOHN:  If it's -- if, for whatever reason,

08:33:11  17   it's called -- any further evidence is --

08:33:13  18        THE COURT:  Are we going to take a field trip?

08:33:16  19        MR. JOHN:  Well, I wasn't planning on it at this

08:33:19  20   time, but if something like that comes up --

08:33:21  21        THE COURT:  I am just not following you.  I get

08:33:24  22   that the physical objects are located in Midland but

08:33:29  23   that's -- you know, in terms of the safety and welfare of

08:33:33  24   the witnesses, I don't see where that makes much

08:33:35  25   difference.

08:33:36  1          MR. JOHN:  Okay.  Your Honor, I'll move on from

08:33:38  2   that.

08:33:38  3          THE COURT:  Okay.

08:33:39  4          MR. JOHN:  That point.  The cost of attendance

08:33:41  5   for witnesses, for most of the witnesses, that would be

08:33:45  6   Midland.  The availability of compulsory process, that's

08:33:51  7   more in Midland.  So a lot of private interest factors

08:33:59  8   would support the Midland trial.  And so, the factors as a

08:34:04  9   whole, we contend, actually supports holding the case in

08:34:08  10  Midland.

08:34:09  11         THE COURT:  Okay.  Ms. Hargrove, anything else?

08:34:12  12         MS. HARGROVE:  No, your Honor.

08:34:15  13         THE COURT:  We will -- I appreciate all of the

08:34:18  14  information you all gave me this morning.  Give me one

08:34:20  15  second.

08:34:31  16         MR. JOHN:  Your Honor, there's --

08:34:33  17         THE COURT:  Yes, sir.

08:34:34  18         MR. JOHN:  Thank you, your Honor.

08:34:35  19         I wanted to mention one last thing is the local

08:34:39  20  interest, your Honor.  This is a frac trailer case --

08:34:44  21         THE COURT:  Counsel, I'm way past the local

08:34:47  22  interest or all that other stuff.  I'm just trying to

08:34:50  23  figure out, what is the safest way to have a trial,

08:34:53  24  balancing between who the witnesses are.  I get the local

08:34:57  25  interest.  If this were -- if this were December of 2019,

| | | |
|---|---|---|
| 08:35:02 | 1 | we would be trying this case in Midland, and so, it's not. |
| 08:35:07 | 2 | It's February of 2021, and I'm just trying to do the best |
| 08:35:11 | 3 | I can to make it as safe for everyone that's involved, |
| 08:35:15 | 4 | balancing everything so we can have a trial. |
| 08:35:19 | 5 | And this case has taken -- and also, if this case |
| 08:35:22 | 6 | were only 18 months old, I'd say let's wait until October |
| 08:35:28 | 7 | or November or December, whatever.  This case is, like you |
| 08:35:31 | 8 | said, three years old.  I'm trying to get it to trial, and |
| 08:35:34 | 9 | I'm trying to do that and balance the -- and your folks |
| 08:35:38 | 10 | brought -- I think I'm right.  Your folks brought the |
| 08:35:41 | 11 | case, right? |
| 08:35:42 | 12 | MR. JOHN:  Yes, your Honor. |
| 08:35:42 | 13 | THE COURT:  So I would assume when you brought |
| 08:35:45 | 14 | the case, you have an interest in me getting it to trial. |
| 08:35:48 | 15 | MR. JOHN:  Yes, sir. |
| 08:35:49 | 16 | THE COURT:  So I get all the issues you've talked |
| 08:35:51 | 17 | about.  When my order comes out, it's going to be -- and I |
| 08:35:57 | 18 | don't know what I'm going to do.  I was about to talk to |
| 08:35:59 | 19 | my clerk here and find out when we'll get the order out. |
| 08:36:02 | 20 | It will be soon.  But I'm not trying to move this case to |
| 08:36:08 | 21 | Waco for any reason other than if on balance, I feel it's |
| 08:36:12 | 22 | safer for the majority of people involved to have it here. |
| 08:36:15 | 23 | If I think it's safer to do it in Midland, I'll do it in |
| 08:36:19 | 24 | Midland.  And that's what I'm trying to accomplish here. |
| 08:36:23 | 25 | I get all of your other arguments.  I get that |

| | | |
|---|---|---|
| 08:36:26 | 1 | it's late that we're dealing with this.  I get it's |
| 08:36:28 | 2 | different from the Intel trial.  Everything you've said, I |
| 08:36:31 | 3 | fully understand.  But I am going to -- there's no right |
| 08:36:36 | 4 | answer.  I'm just going to have to do what I can to figure |
| 08:36:39 | 5 | out what is the safest thing. |
| 08:36:41 | 6 | I don't believe that opposing counsel has some |
| 08:36:44 | 7 | mischievous reason for wanting it to be in Waco.  I think |
| 08:36:50 | 8 | it's -- and so, I'm not ascribing anything to them like |
| 08:36:53 | 9 | that, which you suggested.  I'm just going to try and do |
| 08:36:58 | 10 | the best I can to try the case in the place that's the |
| 08:37:00 | 11 | safest as possible.  And so, I'll be back in a few |
| 08:37:03 | 12 | seconds. |
| 08:37:08 | 13 | MR. JOHN:  Thank you. |
| 08:37:59 | 14 | THE COURT:  Okay.  Thank you all for your |
| 08:38:01 | 15 | briefing and arguments this morning.  We'll have an order |
| 08:38:03 | 16 | out by the end of the week on this.  Have a good day. |
| 08:38:07 | 17 | Take care. |
| 08:38:07 | 18 | MR. JOHN:  Thank you, your Honor. |
| 08:38:09 | 19 | MS. HARGROVE:  Thank you, your Honor. |
| | 20 | (Proceedings concluded.) |
| | 21 | |
| | 22 | |
| | 23 | |
| | 24 | |
| | 25 | |

1                    *  *  *  *  *  *

2

3

4   UNITED STATES DISTRICT COURT  )

5   WESTERN DISTRICT OF TEXAS)

6

7      I, LILY I. REZNIK, Certified Realtime Reporter,

8   Registered Merit Reporter, in my capacity as Official

9   Court Reporter of the United States District Court,

10  Western District of Texas, do certify that the foregoing

11  is a correct transcript from the record of proceedings in

12  the above-entitled matter.

13     I certify that the transcript fees and format comply

14  with those prescribed by the Court and Judicial Conference

15  of the United States.

16     WITNESS MY OFFICIAL HAND this the 1st day of March,

17  2021.

18

19

20                         /s/Lily I. Reznik
                           LILY I. REZNIK, CRR, RMR
21                         Official Court Reporter
                           United States District Court
22                         Austin Division
                           501 W. 5th Street,
23                         Suite 4153
                           Austin, Texas 78701
24                         (512)391-8792
                           SOT Certification No. 4481
25                         Expires:  1-31-23