IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | |
|---|---|
| TRUE CHEMICAL SOLUTIONS, LLC, §<br>    *Plaintiff/Counter-Defendant,* §<br>§<br>v. §<br>§<br>PERFORMANCE CHEMICAL §<br>COMPANY, §<br>    *Defendant/Counter-Plaintiff.* § | 7-18-CV-00078-ADA |

### ORDER GRANTING PCC'S EMERGENCY MOTION TO TRANSFER VENUE TO WACO PURSUANT TO 28 U.S.C. § 1404(a)

Before the Court is Defendant/Counter-Plaintiff Performance Chemical Company's ("PCC") Opposed Motion to Transfer this case to the Waco Division for purposes of trial pursuant to 28 U.S.C. § 1404(a). ECF No. 268. The Motion was filed on January 22, 2021. *Id.* Plaintiff/Counter-Defendant True Chemical Solutions, LLC ("True Chem") filed its Response on January 29, 2021. ECF No. 269. PCC filed its Reply on February 5, 2021. ECF No. 271. True Chem filed its Sur-Reply on February 17, 2021. ECF No. 273. After considering all related pleadings, the relevant law, and the party's oral arguments during a hearing conducted on February 24, 2021, the Court is of the opinion that PCC's Motion should be **GRANTED**.

### I. Factual Background

True Chem initiated this lawsuit on April 27, 2018 by filing a Complaint in the Midland Division of the Western District of Texas, seeking a declaratory judgment of non-infringement and invalidity of PCC's '452 patent. ECF No. 1. PCC has counterclaimed for infringement, seeking damages and injunctive relief. ECF No. 25. Neither party disputes that venue is appropriate in the Western District of Texas. ECF Nos. 1, 25. On April 26, 2019, this Court was

1

assigned this case due to its expertise in patent matters. ECF No. 46. Accordingly, while the case was filed in Midland, most courtroom proceedings to date have taken place at the courthouse in Waco.

Almost two years after this suit was filed, the coronavirus pandemic began in the United States. Press Release, The White House, Message to the Congress on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (Mar. 13, 2020), https://www.whitehouse.gov/briefingsstatements/message-congress-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/. The pandemic has disrupted the scheduling of jury trials around the country, and the instant case is no exception. The Court has been forced to delay trial in this case multiple times over the past year — most recently when True Chem obtained a continuance of trial based on its lead counsel's COVID-19 diagnosis. ECF #263. As a result, this case has now been pending for almost three years. Discovery in the case is essentially closed. The parties have submitted their pretrial disclosures of witnesses and exhibits. ECF No. 230. All that remains is trial.

The Court conducted a hearing on December 10, 2020 in which it raised the possibility of holding trial in Waco. ECF No. 243. At that hearing, both parties indicated they were open to this arrangement, though counsel for True Chem reserved the right to verify their clients' position. ECF 251. Several weeks later, True Chem let the Court know that it was, in fact, opposed to a transfer to Waco. ECF No. 271. As a result, PCC filed the instant Emergency Motion to Transfer from Midland to Waco, which the parties have now fully briefed and argued before the Court on February 24, 2021. ECF 271.

## II. Standard of Review

In the Fifth Circuit, the § 1404(a) factors apply to both inter-district and intra-district transfers. *In re Radmax Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013). It is well-settled that trial courts have even greater discretion in granting intra-district transfers than they do in the case of inter-district transfers. *See, e.g.*, *Sundell v. Cisco Systems Inc.*, 1997 WL 156824, at *1, 111 F.3d 892 (5th Cir. 1997) ("Under 28 U.S.C. § 1404(b), the district court has broad discretion in deciding whether to transfer a civil action from a division in which it is pending to any other division in the same district.").

Title 28 U.S.C. § 1404(a) provides that, for the convenience of parties, witnesses and in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *VanDusen v. Barrack*, 376 U.S. 612, 622 (1964)). A motion for transfer, whether intra- or inter-district, involves a two-step analysis: 1) whether the case could have been properly brough in the forum to which transfer is sought and 2) whether transfer would promote the interest of justice and/or convenience of the parties and witnesses. *Radmax*, 720 F.3d 285, 288; *see also In re Volkswagen of America, Inc.,* 545 F.3d 304, 312, 314 (5th Cir. 2004) (en banc).

The Fifth Circuit has held that "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. US. Fid & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory

process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing to *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

### III. Discussion

There is no dispute as to whether this case could have been properly brought in the Waco Division. It clearly could have been. Accordingly, the first step in this analysis supports transfer to Waco. *See Radmax*, 720 F.3d 285, 288.

#### A. The Private *Volkswagen* factors favor transferring the case to Waco.

In considering private factors, the Court necessarily engages in a comparison between the hardships the defendant would suffer through the retention of jurisdiction and the hardships the plaintiff would suffer from transferring the action to the transferee venue. *Cf. Iragorri v. United Technologies Corp.*, 274 F.3d 65, 74 (2d Cir. 2001) (stating courts engage in such a comparison for *forum non conveniens* analyses). The Court will assess each of these factors in turn.

##### i. The "relative ease of access to sources of proof" factor is neutral.

A court looks to where documentary evidence, such as documents and physical evidence, is stored when considering the first private interest factor. *Volkswagen II*, 545 F.3d at 316. "To properly consider this factor, parties must "describe with specificity the evidence they would not

be able to obtain if trial were held in the [alternate forum]." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981).

In its Motion, PCC argues that discovery is basically complete and that "the parties already have all the evidence they need in order to try the case." Def.'s Opposed Mot. to Transfer to the Waco Division (hereinafter "Mot. to Transfer") at 5. PCC also points out that PCC, while based in Midland, has operations throughout the State of Texas. *Id.* Finally, PCC raises the issue of witness/lawyer locations, but the Court feels those facts are not relevant under this factor and will take it up instead below. *Id.*

True Chem argues that the status of discovery is irrelevant because "[t]he relevant time for any venue analysis is the time of filing." Pl.'s Resp. in Opp'n to Defs.' Mot. to Transfer Venue (hereinafter "Resp.") at 2 (quoting *eRoad Ltd. v. PerDiemCo LLC*, Case No. 6:19-cv-026, 2019 WL 10303654, at *6 (W.D. Tex. Sep. 19, 2019)). True Chem further notes that sources of proof are all *still* located in Midland, referring particularly to the accused trailers. *Id.*

PCC replies that "[w]hile the typical venue analysis considers the facts at the time suit was filed, venue law does not require courts to engage in a rigid, and fictional, analysis when unanticipated subsequent events like a pandemic require transfer in the interest of justice." Def.'s Reply in Supp. of Def.'s Mot. to Transfer to the Waco Division (hereinafter "Reply") at 2. PCC also balks at the notion that this is an instance of forum shopping, noting that it is instead a case of changed circumstances and that the Court should take that change into account. *Id.* at 3. True Chem's Sur-Reply does not directly address these arguments but again notes that "True Chem sued PCC where both parties are headquartered, where both parties' employees live, and where both sides' frac trailers are located." Pl.'s Sur-Reply in Opp'n to Def.'s Mot. to Transfer to the Waco Division (hereinafter "Sur-Reply") at 2.

The Court finds this factor is neutral. On the one hand, the Court recognizes that this factor typically turns on where physical documentary evidence is located. *See, e.g., Volkswagen II*, 545 F.3d at 316. Given that True Chem is the accused infringer, it will likely have the bulk of the relevant documents in this case. *See, e.g., In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."). And, of course, True Chem is based in Midland.

On the other hand, the Court agrees with PCC that it "may appropriately consider the current realities of the case." As noted above, document discovery is essentially complete and thus should be readily available in electronic form to counsel for all parties. And though True Chem repeatedly notes that the accused trailers themselves are located in Midland, the Court does not expect these trailers will be brought into the courtroom and does not foresee the opportunity for any field trips during trial. In light of the above, this appears to be one of those instances, in which the location of physical evidence no longer has any bearing on the relative ease of access to sources of proof. *See VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-00977-ADA, ECF No. 408, at 6 (W.D. Tex. Dec. 31, 2020). Accordingly, the Court finds that the "ease of access to sources of proof" factor is neutral.

    ii. **The "compulsory process" factor is neutral.**

When balancing this factor, the Court considers the availability of compulsory process to secure the attendance of witnesses whose attendance may require a court order. *Volkswagen II*, 545 F.3d at 316.

PCC argues that this factor is neutral because the bulk of the witnesses in this case are employees of the parties and thus under the control of either PCC or True Chem. Mot. to

Transfer at 6. PCC also notes that no non-party witnesses are based in Midland and that most are based in Houston, which is significantly closer to Waco than to Midland. *Id.* True Chem responds that at least four of the likely witnesses are subject to the Court's subpoena power in Midland but not in Waco. Resp. at 4. PCC replies by pointing out that this factor relates primarily to third-party witnesses and that the witnesses referenced in True Chem's Response are largely party employees – and thus subject to the parties' control. Reply at 3. PCC further notes that the one named inventor who is not currently employed by one of the parties is located in Forth Worth, which is not subject to the compulsory process of a Court sitting in Waco or Midland. *Id.* In response, True Chem repeats its assertion that none of the witnesses in question are subject to subpoena power in Waco whereas several witnesses are subject to subpoena power in Midland. Sur-Reply at 1-2.

After considering the parties' arguments, the Court finds that this factor is also neutral. Though True Chem focuses on the sheer number of witnesses who would be subject to a Midland Court's subpoena power, it has not shown any potential witness is unwilling to testify. When no party has alleged or shown any witness's unwillingness, a court should not attach much weight to the compulsory process factor. *Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006); *CloudofChange, LLC v. NCR Corp.*, No. 6:19-cv-00513, 2020 WL 6439178, at *4 (W.D. Tex. Mar. 17, 2020). Here, neither True Chem nor PCC has identified any unwilling witnesses. Absent any showing of unwillingness, the Court will not attach much weight to this factor. Consequently, the Court finds this factor neutral.

### iii. The "cost of attendance" factor weighs in favor of transfer.

The convenience of witnesses is the most important factor in a § 1404(a) analysis. *Genentech, Inc.*, 566 F.3d at 1342. While a court should not consider the significance of

7

identified witnesses' testimonies, it should consider whether the witnesses may provide materially relevant evidence. *Id.* at 1343.

To assist in analyzing this factor, the Fifth Circuit adopted a "100-mile rule." *Volkswagen I*, 371 F.3d at 204–205; *see also Volkswagen II*, 545 F.3d at 317. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. Consequently, the threshold question is whether the movant's proposed venue and a plaintiff's chosen venue are more than 100 miles apart. *See Volkswagen II*, 545 F.3d at 317. If the distance is greater, then a court will consider the distances between the witnesses and the two proposed venues. *See id.* Importantly, the venue need not be convenient for *all* witnesses. *Genentech, Inc.*, 566 F.3d at 1345.

As previously stated by this Court, "given typical time limits at trial, the Court does not assume that all of the party and third-party witnesses listed in 1404(a) briefing will testify at trial." *Fintiv, Inc.*, 2019 WL 4743678, at *6. Indeed, the Court assumes only a few party witnesses and even fewer non-party witnesses (if any) will testify at trial. *Id.* Consequently, long lists of potential party and non-party witnesses do not affect the Court's analysis for this factor. *Id.*

In its motion, PCC again notes that no third parties reside in Midland. Mot. to Transfer at 6. Rather, the majority of third parties live in Houston, which is significantly closer to Waco. *Id.* PCC also points out that Midland hotels are more expensive than those in Waco. *Id.* at 7.

True Chem responds that "nine of the 11 likely witnesses who will attend trial are based in the Midland-Odessa area, which is over 300 miles – or five hours by car – from Waco." Resp. at 5. They also note that another witness lives in Iraan, Texas, which is five hours from Waco

8

and one hour from Midland. *Id.* True Chem finally points out that holding trial in Waco would require these witnesses to stay overnight in Waco hotels whereas trial in Midland would allow them to return to their own homes each night. *Id.*

PCC replies that the most important private interest factor is "not the relative convenience of the parties and their employees — it is the convenience of non-party witnesses." Reply at 4. PCC further argues that in a technical patent case, the Court should also consider the convenience of the parties' experts, none of whom are in the Midland-Odessa area. *Id.* More importantly, PCC points out that all but one of the non-party witnesses are farther from Midland than Waco, meaning that "third party trial witnesses will have to travel significantly less distance — and likely avoid air travel and lengthy hotel stays — if trial takes place in Waco." *Id.*

In its sur-reply, True Chem notes again that while five fact witnesses are closer to Waco than to Midland, no witnesses actually live in Waco. Sur-Reply at 3. True Chem also takes issue with the addresses PCC has used for its witnesses — specifically, a Houston address for a representative of B&H Industrial Electrical Construction and Maintenance Inc., which True Chem alleges is merely the address of B&H's agent for service of process. *Id* at 2. Finally, True Chem notes again that holding trial in Waco would "unnecessarily burden the parties' [sic] with higher travel and lodging costs." *Id* at 3.

The Court finds that this factor weighs only very slightly in favor of transfer. First, the convenience of party witnesses is typically given little weight because the witnesses' employer could compel their testimony at trial. *Turner v. Cincinnati Ins. Co.*, 6:19-cv-642-ADA-JCM, 2020 WL 210809, at *4 (W.D. Tex. Jan. 14, 2020); *Freehold Licensing, Inc. v. Aequitatem Capital Partners, LLC*, A-18-cv-413 LY, 2018 WL 5539929, at *7 (W.D. Tex. Oct. 29, 2018). Some courts have considered how far these witnesses would need to travel if few or no witnesses

reside within the current district. *See, e.g., Genentech, Inc.*, 566 F.3d at 1345 (determining the convenience factor favored transfer, and not only slightly, in part because the defendants' employees and managers would not have to travel as far and the foreign plaintiff had no connection to the current venue); *contra Fintiv, Inc.*, 2019 WL 4743678, at *6 (stating the cost of attendance for party witnesses did not weigh for or against transfer because there were several potential witnesses in both potential venues). However, because courts give the convenience of party witnesses little weight, the Court finds this consideration neutral irrespective of where these individuals may reside.

The Court thus agrees with PCC that the most important element in analyzing this factor is the convenience of *non-party* witnesses. Given that "all but one of the non-party witnesses listed as 'will call live' or 'may call live' are farther from Midland than Waco," it seems clear that this factor must weigh at least slightly in favor of transfer. Even if True Chem is right as to the true location of certain witnesses, it has not persuasively rebutted PCC's point that the vast majority of non-party witnesses would find it easier and cheaper to travel to Waco than to Midland. Consequently, this factor favors transfer.

> **iv.    The "all other practical problems" factor strongly favors transfer to Waco.**

In considering a transfer motion, the court considers "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315.

In its opening brief, PCC argues that "the practical reasons to transfer this case to Waco are compelling" for several reasons that fit into two broad categories: safety and efficiency. Mot. To Transfer at 7. First, PCC points out that the COVID-19 outbreak is worse in Midland than in Waco. *Id.* Relatedly, PCC notes that this Court has recently "undertaken significant efforts to outfit its Waco courtroom in order to hold in-person jury trials in the safes manner possible." *Id.*

10

Second, PCC argues that a transfer to Waco would allow for an earlier trial date since a setting in Midland "would require balancing Judge Counts' courtroom calendar with Judge Albright's courtroom calendar in order to find an available date and courtroom in Midland." *Id.* PCC points out that trial has already been delayed several times and that any further delay would cause significant prejudice to PCC, who has been seeking to obtain an injunction against True Chem since 2018. *Id.*

True Chem responds that none of the issues raised by PCC are relevant because "they reflect events that arose long after True Chem filed this lawsuit." Resp. at 7. True Chem also contends that a courtroom in Midland is no less safe than one in Waco and that, if anything, transfer to Waco is more dangerous because it would force party witnesses to travel. *Id.* True Chem further claims that PCC's concern for delay is unwarranted since the PCC has never raised a complaint about the time to trial until now. *Id.* Finally, True Chem argues that this factor should weigh against transfer because both parties have already hired local counsel in Midland. *Id.* at 8.

PCC replies that the bulk of True Chem's assertions under this factor actually belong under the "compulsory process" or "convenience of witnesses" factors. Reply at 4. They also note that True Chem has previously argued to the Court in its Motion for Continuance that local counsel is not heavily involved in this case. *Id.* True Chem doesn't directly address this factor in its sur-reply but repeats its arguments about employees/party witnesses residing Midland. Sur-Reply at 1-2.

The Court agrees with PCC. True Chem is correct that Judge Counts has also taken considerable precautions to ensure jury trials can be safely held in the Midland Courthouse. But comparing the relative safety of conducting the trial itself between the courthouses in Waco and

11

Midland is not the correct analysis in this Court's opinion. What is driving the decision here is the simple fact that nearly every third-party witness is farther from Midland than Waco. Accordingly, all but one of these witnesses (along with the parties' lawyers) would have to travel a greater distance in a time where such travel remains highly discouraged.

But even putting COVID-19 safety concerns aside, PCC is correct that a trial setting in Midland is necessarily more difficult to schedule due to competing courthouse calendars. Keeping trial in Midland would thus doubtless involve further delay in a case that has already seen *no less than six trial postponements*. This case was originally set for trial on February 28, 2020. ECF No. 14. It was first postponed to June 6, 2020. ECF No. 28. It was then postponed to August 3, 2020. ECF No. 44. In April 2019, trial was postponed yet again to December 14, 2020. Finally, the case was set for trial on January 25, 2021 when the Court entered the Ninth Amended Scheduling Order in this case. ECF No. 99. Subsequent to the entry of the Ninth Amended Scheduling Order, the Court entered a Tenth Amended Scheduling Order, which maintained the 1/25/21 trial setting. (ECF No. 143). In light of its increasingly busy docket, the Court raised the possibility of trial in Waco, which would likely allow for a lengthier trial, if necessary. ECF No. 251.

On January 5, 2021, True Chem filed its Opposed Emergency Motion to Continue Trial in View of Positive Covid-19 Test. ECF No. 263. The next day, January 6, 2021, True Chem submitted a letter to the Court objecting to holding trial in Waco. ECF No. 271. PCC opposed True Chem's motion for continuance. ECF No. 264. On January 12, 2021, the Court informed the parties by email that it would grant True Chem's continuance motion and postpone trial to February 16, 2021. On January 22, 2021, the Court notified the parties by email that it would no longer be able to hold trial in Midland on February 16, 2021 due to a scheduling conflict. PCC

then filed the instant motion on January 22, 2021. ECF No. 268. For obvious reasons, the Court opted not to set a new trial date until briefing was complete and the motion was resolved.

This is by no means intended to suggest that any one party is to blame for the many delays in this case. But, given that PCC is seeking injunctive relief, any further delay is inherently more prejudicial to PCC. *See Peleton Interactive, Inc. v. Flywheel Sports, Inc*., No. 2:18-cv-00390-RWS-RSP, 2020 WL 338124, at *3 (E.D. Tex. Jan. 21, 2020) (Payne, Mag. J.) (considering, in denying a motion for leave to amend invalidity contentions, the prejudice that a delay of trial would cause to Peleton, which was seeking a permanent injunction in a case between competitors). Because a trial in Waco is likely to be safer and take place sooner than one in Midland, the Court finds this factor weighs in favor of transfer.

### B.  The Public *Volkswagen* factors are neutral.

The relevant public-interest factors are neutral. As previously noted, these factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law governing the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law. *Volkswagen II*, 545 F.3d at 315. The Court will also consider each of these factors in turn.

#### i.  The "administrative difficulties flowing from court congestion" factor favors transfer to Waco.

Administrative difficulties manifest when litigation accumulates in congested centers instead of being handled at its origin. *Gulf Oil*, 330 U.S. at 508. This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *Parsons v. Chesapeake & Ohio Ry. Co.*, 375 U.S. 71, 73 (1963); *Koehring Co. v. Hyde Constr. Co.*, 324

F.2d 295, 296 (5th Cir. 1963). The relevant inquiry under this factor is the speed with which a case comes to trial and is resolved. *Genentech, Inc.*, 566 F.3d at 1347.

In its opening brief, PCC again emphasizes the Court's ability to hold trial more quickly in Waco than in Midland and cites the Court's recent Order transferring *VLSI v. Intel* from Austin to Waco. Mot. to Transfer At 8 (citing *VLSI Tech. LLC v. Intel Corp.*, No. 1:19-cv-00977-ADA, ECF No. 408, at 3 (W.D. Tex. Dec. 31, 2020)). True Chem responds that PCC is attempting to use "administrative reassignment to bootstrap transfer under 1404(a)" and that the Court "should not weigh its own convenience ahead of the convenience of the Midland-based party and non-party witnesses." Resp. at 8. True Chem also takes issue with PCC's characterization of the Court's findings in *Intel*, arguing that that case has nothing in common with this one. *Id* at 9.

PCC replies that it is not attempting to "bootstrap" but rather to "achieve a timely and safe jury trial in unique circumstances," arguing that while transfer is not proper every time a case is assigned to a judge in a different division, the "pandemic and the changed circumstances in this case" warrant it. Reply at 5. True Chem does not directly address this factor in its sur-reply.

The Court finds this favor weighs in favor of transfer. As PCC points out, the Court's docket is "extraordinarily full, with at least one trial per month scheduled every month between now and 2022." Mot. to Transfer at 8. The reality is that a trial in Midland will require a coordination of courtroom schedules that a Waco trial would not. In other words, there are dates on which this Court could hold trial in Waco but not in Midland. The reverse is not true. Indeed, given the busy dockets in both the Waco and Midland Divisions, a Midland setting would likely result in a delay of many months. And, as PCC notes, "the relative speed with which an action

14

may be resolved is a potentially important consideration in patent cases particularly where a patent holder seeks to enjoin its competitors from using plaintiff's invention to gain a potentially irreversible advantage in the marketplace or where plaintiff seeks lost profit damages which are inherently difficult to prove."). Reply at 5, n. 10 (quoting *Guardia Media Tech., Ltd. v. Mustek Sys., Inc.*, 440 F.Supp.2d 937, 939 (W.D. Wis. 2006)). Accordingly, the Court finds that this is one of those "rare and special circumstances" where "a factor of 'delay' or of 'prejudice' might be relevant in deciding the propriety of transfer." *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).

True Chem insists that the Court "should not weigh its own convenience ahead of the convenience of the Midland-based party and non-party witnesses." Resp. at 8. The Court agrees. But as it happens, one of those Midland-based parties finds Waco to be more convenient because it will allow for a safer and speedier trial. As for the non-party witnesses, the Court has already found that Waco is considerably more convenient for them. Accordingly, the Court finds this factor weighs in favor of transfer. That said, the Court is aware that this factor should not receive dispositive or undue weight in a § 1404(a) analysis. *In re Adobe Inc.,* 823 F. App'x 929, 932 (Fed. Cir. 2020). This Court takes note of the Federal Circuit's guidance and accords this factor weight equivalent to that given to other factors.

### ii. The "localized interest" factor weighs against transfer.

There is "a local interest in having localized controversies decided at home." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947); *Piper Aircraft*, 454 U.S. 235, 260 (1981). In its opening brief, PCC argues that, while both parties are based in Midland, not all of the relevant conduct took place in the Midland area. Mot. to Transfer at 8. Rather, PCC performs services throughout Texas, New Mexico, and Louisiana. In addition, two of the customers that PCC claims True Chem "was able to steal" are based in Denver, Colorado and Houston, Texas. *Id.*

True Chem responds that "both parties, their employees, the named inventors, the trailers at issue, and the employees who built those trailers are all here in Midland." Resp. at 9. True Chem then cites this Court's finding that this factor favored transfer to Austin where "patents-in-suit were all invented in Austin, primarily by residents of Austin, and at companies based in Austin." *Id.* (citing *VLSI Tech. LLC v. Intel Corp.*, No. 6:19-CV-00254-ADA, 2019 WL 8013949, at *5 (W.D. Tex. Oct. 7, 2019)). By contrast, True Chem notes that Waco has "zero interest in resolving this dispute" because "[n]either party has any operations in Waco, and to True Chem's knowledge, none of the parties' customers or their drilling sites are located in Waco." *Id.*

PCC responds that any local interest Midland may have in this matter is outweighed by PCC's own interest in achieving a timely jury trial and that this factor should be afforded less weight in the context of an intra-district transfer. Reply at 5. Without responding directly to the arguments in PCC's reply, True Chem's sur-reply points out again that "[t]his case has everything to do with Midland and absolutely nothing to do with Waco." Sur-Reply at 2.

The Court finds that this factor weighs against transfer. Though, the Court takes PCC's point that "not all the relevant conduct took place in Midland," there is no denying that more relevant conduct took place there than anywhere else. If any forum has a local interest in the resolution of this dispute, it is Midland. Accordingly, the Court finds that this factor weighs against transfer.

### iii. The remaining public factors are neutral.

As True Chem notes, "courts routinely treat the third and fourth public interest factors as neutral in patent cases." Resp. at 10. Neither party has argued that these factors support or weigh against transfer. Accordingly, the Court finds the remaining public factors are neutral.

## IV. Conclusion

The following table summarizes the Court's conclusions for each factor:

| Factor | Court's Finding |
| --- | --- |
| Relative ease of access to sources of proof | Neutral |
| Compulsory process | Neutral |
| Cost of attendance | Weighs in favor of transfer to Waco |
| All other practical problems | Weighs in favor of transfer to Waco |
| Administrative difficulties flowing from court congestion | Weighs in favor of transfer to Waco |
| Localized interest | Weighs against transfer to Waco |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

Finding that three factors weigh in favor of transfer and only one weighs against, the Court finds that Defendant/Counter-Plaintiff PCC's Motion to Transfer pursuant to 28 U.S.C. § 1404(a) should be and hereby is **GRANTED**. The Court thus orders the case be **TRANSFERRED** to the Waco Division and set for trial on March 29, 2021.

Signed this 5th day of March, 2021.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE